We'll hear argument now in the case of United States v. Bacon. Ms. Kelly. Good morning, Your Honors. May it please the Court, my name is Attorney Anise Kelly and I represent Appellant Shawn Bacon in this matter. Let me start with the first issue that the lower court committed clear error in determining probable cause existed to issue the search warrant. The search warrant was based on law enforcement affidavit and the affidavit was based on two anonymous tips and two controlled buys. A controlled buy is proper when law enforcement does not know the buyer and potentially have sound on the transaction and they keep the buyer under observation during the deal. That did neither one of that, none of those factors occurred in either one of these controlled buys. But the district court addressed that. I mean this is a somewhat different variation on this theme. Of course the the actual buyer and seller are playing a part in this law enforcement exercise and so they certainly weren't going to have a pre-buy and sell search or be fitted with a wire or the rest of it. They're thinking that they're just doing an ordinary drug transaction, so to speak. And the district court considers whether there was a serious risk that these anonymous people already had the drugs on them, you know, because that would be what you're afraid of, right? They get observed going into the door that leads to Mr. Bacon's residence. They get observed leaving and then we get the the drugs. But you're right that you can't rule out the possibility that these anonymous folks already had in a pocket a certain amount of drugs. But the district court says how likely was that? I mean we don't have to have perfection for probable cause and they, especially the one where the methamphetamine gets added to the order at the last minute, the district court thinks it's it's good enough to make somebody think that the drugs that are recovered afterwards came from that residence. So maybe you should address the district court's reasoning there. You're correct, Your Honor. The court held that the credibility, if you will, of the anonymous buyers didn't matter but it was their actions in obtaining the drugs. And we would argue that their actions in obtaining the drugs are based only on their credibility because nobody observed them in addition to no searches. That's not credibility really, is it? It's just we don't know what they had on their person. That's not really even credibility. That's just there's some factual gaps that are impossible to fill if you're going to use these unwitting intermediaries. And maybe your attack is simply on this as a police strategy since inherently you'll never know what the unwitting intermediary was carrying before the transaction. Well I guess you know that is part of the point. I think you're right and that that's the point of what the many many courts have held what a controlled buy looks like. Your point seems to be more of a sufficiency of the evidence point. That if these individuals, these unwitting individuals are going in and you can't track what that individual is doing that we don't know if they really got the drugs from the defendant here or from somebody else. Well and if you focus on the second control buy which is very troubling in both pre and post transaction before anything is handed over to the government. At a minimum that that raises many red flags and and requires at a minimum a Frank's hearing. Although I would argue that there was no probable cause full stop but absent no probable cause then at least a Frank's hearing. Why would that require a Frank's hearing? What in because the Frank's hearing is about the affidavit itself and whether or not something was misleading in the affidavit that was material to the probable cause determination. But the district court judge or the judge when he issued the search warrant here had the information in the affidavit that these individuals went in on their own without being searched before or afterwards. Correct and and that's where we would argue that that's clear error that there was no probable cause. That's a separate question you said that the individual going into the home without being searched before or afterwards at a minimum required a Frank's hearing. But the Frank's hearing is a separate issue that's whether or not there was some misrepresentation either affirmative or by omission that would have impacted the probable cause determination before the judge issuing the warrant. I apologize if I misspoke when I was talking about a Frank's I was speaking to what the detective knew about the buyers. What if anything the detective knew about the buyers um and whether or not they were truly anonymous to him. Had he known that they were drug dealers themselves because post suppression hearing they were both arrested for dealing drugs during the relevant time of these controlled buys. So that's what I meant um when I said that the Frank's hearing it's more about what the detective knew. Post arrest occurred quite a bit afterwards and they were after the warrant was submitted. So why how could that information possibly have been put in the warrant affidavit? No, I understand what you're saying. But the drug deals that these uh buyers were arrested for the drug deals occurred during the relevant time of controlled buys. I believe they occurred between november and december the same time that these controlled buys occurred. So these are drug dealers who are then asked to be quote unwitting informants that nobody observed including the confidential informant. Nobody went into Mr Bacon's apartment with them and especially with the second control by where he went to his house before and after there's why why wouldn't it just be common sense for the judge to know that these individuals are drug dealers. They're not cooperating. They individually and separately tell two different C. I. S. That they could get drugs from Mr Bacon. They get drugs. They they are exposing themselves to criminal liability because they're getting drugs and they don't have any kind of deal with the government. They don't know the government is even watching. Why wouldn't those facts be sufficient to put the court on notice that these are drug dealers going in and getting the drugs from the department here? I don't know that everybody who buys drugs is a drug dealer. I think that many people buy drugs simply for their own use and I and I think that's clearly not what they did here. The middle person didn't maybe got some extra for his own use but he got the drugs and gave them to the confidential informants that we know because the confidential informants were searched both before and afterwards and they had the drugs on them after the fact. So whether or not they had a personal drug habit I don't think is relevant to this. We know they were drug dealers in this instance. Well I don't know that I would say that the issuing court knew that because again an individual could buy drugs for themselves and then pass them along to somebody else. I don't know that that's that that's a known fact that if you buy drugs you're a drug dealer and if you then resell them to somebody else that you're a drug dealer. I think that that is a leap too far to assume in a warrant to break into somebody's house and again as courts of health you know when you're going into somebody's house it's more intrusive and more disruptive. Not that there's a different standard but it's still something to note. So and I would also say that going moving on to the the Franks hearing the decision in the Franks hearing the Franks court held that the lack of credibility of the searches weighed against probable cause. But those were cooperators and the rationale behind disclosing the credibility of cooperators is they're cooperating they're either paid informants so they might be trying to get more money from more information provided on to law enforcement or they're trying to get their sentence lowered and so the more help they greater the likelihood of getting their sentence lowered is. There's a reason that the credibility of confidential informants who are cooperating with the government why their credibility is so central. But those same rationales don't apply to an unwitting participant who is exposing himself to criminal prosecution for a drug deal. So why is that credibility issue so important here as to the unwitting participants? Well again in the Franks decision the court held that the lack of credibility weighed against probable cause and that the lack of searches weighed against probable cause but denied the Franks hearing because because the issuing court knew that that information was Now if I may move on to the Franks motion or would you still like to talk about the suppression? They're both kind of all the same? Correct, correct, there's definitely overlap. Right, so again to obtain a Franks hearing all you have to you just have to make a substantial preliminary showing of a material admission and we would argue that the court itself provided that material omission when it held that the lack of credibility and the lack of the searches weighed against probable cause and but then went on to hold that that's okay because the issuing court knew that and under that standard that it's hard to know how you would ever get an issuing court reversed where the court acknowledges the material omissions and still and still upholds the decision. So I think we meet the first prong of a Franks hearing and then the second prong the material omissions made with reckless disregard. This court has held that credibility omissions provide sufficient circumstantial evidence to support an inference of reckless disregard and that's the the Glover case. So I think both the first prong and the second prong necessary to establish a Franks hearing have been met. I would like I would like to move on to the government argument that section 924 C doesn't require knowledge. We would disagree with that in that the the controlling case is Edwards in this reading of that case applies to all shot barrel rifles and not just shot barrel rifles under 5861 D but also 924 C and the court in Edwards goes through the Supreme Court's opinion in Staples and bases its opinion on Staples. But there is testimony in the record that the 9.5 inch one was just obviously short maybe the other one was on the margins but we just need one right? Well even even the 9.5 I don't think there's any I think there was testimony from the expert I forget if it was the expert or the police officer talking about the test and how he had to be trained in order to measure you know the the barrel of a shotgun. Where do you start measuring? Where do you what what is included? So there was plenty of testimony in the trial transcript about the whole 9.5 certainly is shorter than the 14.5 but I still think there is insufficient evidence and I still think knowledge is required under 924 C. Does it matter here since the jury found on that count both that he possessed a destructive device and a short barrel rifle? Couldn't it just be affirmed on the destructive device possession? Well we also argue there was insufficient evidence of a Right, that's a separate argument. Assuming there is sufficient evidence on that we don't even need to decide the knowledge issue. Would you agree with that? To be quite honest your honor I feel unprepared to agree with that or to not agree with that so I'll just be silent on that. But again the destructive device also was insufficient evidence and again this district announced the standard in the Lockwood case. You had to have a fully assembled destructive device that could detonate or ready access to all necessary components and the government's experts did not satisfy that burden when neither of them testified that they were capable of exploding and I see that my time is up. Thank you Miss Kelly. Mr. Whalen. Thank you your honors and may it please the court. Nathaniel Whalen here on behalf the United States of America. Your honors let me just quickly touch on the knowledge issues to 924 C. That issue is waived. The jury was never instructed as to a knowledge element about the nature of the device for the 924 C. Mr. Bacon didn't object. He didn't argue it in his opening brief and so our position is it's waived. Judge Wood though you are right there was testimony and Caleb Anderson a task force officer in the second volume on page 220 says and I quote could absolutely tell it was going to be shorter than 16 inches. He says a visual inspection just looking at it he had reason to believe it was short and so any juror a reasonable juror could find that a 9.5 inch short barrel rifle was below the 16 inches that were required. In terms of the destructive device the explosive expert Michael Eggleston says on page 142 of the transcript that both devices in this case were designed to explode. Lighting the fuse would cause them to explode. Even Catherine Boyle the chemical expert who testified about the nature of the powder said that all three were explosives. She says on page 103 that all three were low explosives and would explode in confinement. So there was reasonable evidence for a jury to find that it was was a destructive device and Judge St. Eve you are right the jury made special findings that he possessed both a destructive device and a short barrel rifle for count five which is the title 26 offense and then the district court merged the short barrel rifle conviction with the destructive device 924 C conviction at sentencing. So the only reason this court would have to consider the short barrel rifle question is if it reverses and finds it was insufficient evidence on the destructive device. I think that the primary argument there is the testimony that there was so much clay and other material I suppose mixed up with what was inside this is a new term for me a bubba keg. I didn't know there were these things I guess it's just like you know a thermos that's you can make a pipe bomb out of but apparently that it doesn't really she says I don't know for certain whether it would have caused an explosion and she then she says it didn't burn energetically when it had the K mix clay mixed in. That's correct your honor she did say well so there were I guess two different responses first there were two destructive devices at issue she gave testimony that the pipe bomb the materials inside of that the powder inside of that wasn't explosive and then from the bucket bubba keg which if your honor wants to look at the pictures in the record it's kind of like a beer keg except probably about the size of a agents took two different samples of the powder from the bubba keg exhibits 112 and 114 and Miss Boyle the chemistry expert did say that 114 did not explode unless it was segregated from the clay but she said the other sample taken from the exact same explosive device did explode and it wasn't explosive so you know there was sufficient evidence that there was powder in the bubba keg in and of itself to cause it to explode in addition to mr. Eggleston's testimony reference prior your honor and let me just respond to one thing in the reply brief on sufficiency before turning to the probable cause analysis in terms of fentanyl there's the second quantity of fentanyl found on the second search that's 217 grams detective wise testifies as to that on the second volume pages 5455 he says that it's 217.8 grams of fentanyl the government's drug chemistry expert also testifies as to that exhibit exhibit 105 and she says in the second volume page 163 that it's found to contain cocaine fentanyl meth non-controlled substances and she says the net weight was 217 grams so there were two different individuals including a certified expert that testified that that quantity was 217 grams and that it did contain fentanyl again though as with other things in this appeal this court doesn't have to reach that issue because there's no dispute that mr. Bacon had 500 grams of meth in his house and that's sufficient to trigger the sentencing range as to count one your honors turning to the problem unless this court has any further questions on the sufficiency the probable cause analysis and judge would you write that you can't rule out the possibility the unwitting informants as we call them had drugs on them but probable cause doesn't require you to rule it out and this court's talked about that in the Sidwell cases the McKinney cases and numerous cases that a theoretical possibility isn't enough to rule out probable cause and there might be some question I guess if you dealt with one controlled by involving what we're calling unwitting informants but there are two and I think judge St. Eve you hit the nail on the head that we're dealing with two different buys and I kind of add one other point to that which is we're not worried about whether the defendants got the drugs from mr. Bacon or someone else what we're worried about in the probable cause analysis is whether there's probable cause to believe there's drugs inside the apartment so the unwitting informants didn't have to say that they got the drugs from bacon and you know the progression of the case is interesting because judge Springman basically makes that point in her first order on probable cause and then it turns out both the unwitting informants are arrested and she says she didn't really mean to be you know looking into the future and saying it didn't matter if these unwitting informants were dealing the drugs themselves the question is whether the drugs were in the house and so that's the probable cause analysis and given the great deference given to the magistrate judge who issued it this court should affirm that as well as both of the district court judge conclusions that there was probable cause here I haven't seen very many unwitting informants or whatever you want to call them cases and it does seem thin to me I mean we're making this very broad-based assumption that somebody wouldn't have gone upstairs with already with his own drugs in his pocket and gotten more drugs from mr. Bacon or maybe no drugs from from the residence maybe maybe whoever was in the residence was all out that day I mean we with the deal this unwitting informant thought that he or she was in they turned over their own little stash from their pocket you know we would have a very different case and I just wonder is there any burden on the government to explain why you think there other than just oh people wouldn't go upstairs if they already had some drugs that seems very casual to me and not like anything like evidence yeah your honor it was important to think about it or remember in this case is we're dealing with two different trains of informants and unwitting informants so we have two different confidential informants who enlist two different unwitting informants both of whom I believe it's two weeks apart go into the same residence and come out with drugs and so I think to the extent that this courts looking for some assurance and a well I did I so I will agree with you they go into the same residence and at the time they come out they have drugs but the missing piece is we don't know whether they already had drugs at the moment they walked into the residence sure and judge I think that could also be the case with it what we think of as more traditional confidential informant cases they're searched what's to prevent them from have hidden the drugs you know inside the stoop of the door and then pinning it on the third party in the house or somehow having secreted the drugs ahead of time well it's possible but the government takes many steps to do the best they can anyhow to ensure that doesn't happen that's what the priest the pre-transaction pat-downs are all about and other protective measures yeah and I think you got it right that there are only so many steps you can do when you're talking about this unwitting informant because they don't know they're transaction so you can't search them you can't tell them here's what you need to comply with you can't wire them from sound which is why I was asking whether the technique itself of using the unwitting informant I mean I've been here for a long time and I can't think of very many if any other cases that have used this particular law enforcement tactic and judge I haven't seen it before frankly either but I think what's important I guess to the court has some questions about it is that the cases we've cited all the other courts of appeals that have looked at this issue have noted the pluses and the minuses of using the unwitting informant but ultimately every one of them have affirmed probable cause or at least good faith based on the use of the unwitting informant what it all that's the art but would it also matter here mr. Wayland that the government received these two anonymous tips beforehand and the officers followed up on it I guess that because at one point the district court suggested that the anonymous tipsters didn't matter for probable cause and that seemed to be a kind of a big statement give everything we know yeah your honors probably anonymous tips in and of themselves wouldn't have supported probable cause and I think that's probably what the district court judge was saying there it may be his language a little stronger than we would have liked but the anonymous tips do help support probable cause because you have two other people say mr. Bacon at this address is dealing drugs out and they did provide verifiable information that detective wise did go and verify that he was affiliated with this address that he was dealing out of an Impala which was registered to him detective wise goes in I'm sorry observes the apartment and sees mr. Bacon going in and out of it he tracks down the cars he does confirm that mr. Bacon has a prior conviction for dealing in controlled substances and those are certainly feathers on the scale of probable cause and so I do think they support the finding your honor I guess in terms of the Franks hearing I don't have a whole lot to add to our briefs other than to say what's defendants saying explicit I think judge Brady correctly found was in the affidavit and I think judge St. Eve has made that point as well so unless this court has any questions on that or any of the other issues we would ask that you to affirm the convictions and sentences all right thank you very much well miss Kelly your time has expired but we want to thank you very much for accepting the appointment in this case and for your assistance the I apologize I should have kept better attention thank you very much cases taken under advisement